MAYFLOWER INSURANCE COMPANY, LTD., Plaintiff-Appellee, v. JAMES C. MAHAN, JR., Defendant-Appellant.

First District (4th Division)   No. 1—88—1014

Opinion filed December 22, 1988.—Rehearing denied April 11, 1989.

Doyle & Ryan, Ltd., of Chicago (John A. Doyle, of counsel), for appellant.

James T.J. Keating, P.C., of Chicago (James T.J. Keating and Elizabeth S. Davis, of counsel), for appellee.

JUSTICE JOHNSON delivered the opinion of the court:
This is an interlocutory appeal (107 Ill. 2d R. 308) by defendant, James C. Mahan, Jr., from an order of the circuit court of Cook

County denying his motion to dismiss the complaint of plaintiff, Mayflower Insurance Company. The court also denied defendant's motion for reconsideration of the motion to dismiss. The issue certified for review is whether claims involving additional uninsured motorist coverage—underinsured motorist coverage under section 143a—2 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 755a—2) are required to be determined by binding arbitration. Defendant makes the following contentions on appeal: (1) public policy dictates finality of arbitration awards; (2) plaintiff seeks to expand the limited jurisdiction of the court as set forth in the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, pars. 111 through 114); (3) the arbitration clause is ambiguous and, therefore, should be construed against the insurer; and (4) the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 755a—2) prohibits nonbinding arbitration.

We affirm.

Defendant was seriously injured in an automobile accident while a passenger in his father's vehicle. He received full bodily injury liability coverage ($100,000) from his father's insurance carrier and filed an underinsured motorist claim with plaintiff, his insurance carrier. The insurance contract between plaintiff and defendant provided for additional uninsured and underinsured motorist coverage in the amount of $500,000. Under the caption of arbitration, the policy further provided, in pertinent part:

"If we and **covered person** do not agree:

1. Whether that person is legally entitled to recover damages from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**; or

2. As to the amount of damages;

either party may make a written demand for arbitration. ***

* * *

A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the **covered person** is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding."

Pursuant to the policy defendant made a demand for arbitration

of his underinsured motorist claim. On February 12, 1987, the arbitrators awarded defendant $500,000, reduced to $400,000 due to the $100,000 previously received. On April 13, 1988, plaintiff filed a complaint in the circuit court of Cook County "demanding" a trial on defendant's legal entitlement to recover damages and the amount of such damages recoverable. Defendant filed a motion to dismiss the complaint under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615). The motion was denied. Defendant's motion for reconsideration of the section 2—615 motion was also denied. This interlocutory appeal followed.

■ Defendant's first contention is that nonbinding arbitration violates the public policy of Illinois. He argues that Illinois' adoption of the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 101 *et seq.*) (hereinafter the Act) establishes Illinois public policy favoring the finality of arbitrators' decisions. Defendant cites *Charles O. Finley & Co. v. Kuhn* (7th Cir. 1978), 569 F.2d 527, *cert. denied* (1978), 439 U.S. 876, 58 L. Ed. 2d 190, 99 S. Ct. 214, to support his position.

The *Finley* court found that a "waiver of recourse" clause contained in a major league agreement was valid. In *dicta* the court noted that Illinois encourages arbitration as a means of reducing litigation in the court system. Specifically, the court affirmed previous rulings that "informed parties, freely contracting, may waive their recourse to the court." (*Finley*, 569 F.2d at 544.) It follows, therefore, that "informed parties, freely contracting" may contract not to waive their recourse to the courts and elect nonbinding arbitration. Contrary to defendant's assertion, *Finley* does not suggest that nonbinding arbitration is repugnant to Illinois public policy.

*Schutt v. Allstate Insurance Co.* (1985), 135 Ill. App. 3d 136, and *Board of Trustees v. Cook County College Teachers Union* (1981), 102 Ill. App. 3d 681, were also cited by defendant to support his argument that nonbinding arbitration violates Illinois public policy. The issue in *Schutt* was whether Allstate was entitled to a setoff against the arbitrators' award for sums previously paid under the insurance policy and not whether the arbitrators' award was binding. In order to determine whether Allstate was required to raise the setoff issue at arbitration, the court ruled that the arbitration agreement between the parties controlled which issues were subject to arbitration. (*Schutt*, 135 Ill. App. 3d at 141.) The arbitration agreement specified that the parties agreed to be bound by any award rendered by the arbitrators.

Similar to *Charles O. Finley & Co. v. Kuhn* (7th Cir. 1978), 569 F.2d 527, the court in *Schutt* implicitly found that in construing arbi-

tration agreements the court should give effect to the intentions of the parties as expressed in the agreement.

*Board of Trustees v. Cook County College Teachers Union* (1981), 102 Ill. App. 3d 681, is also distinguishable from the present case. In *Board of Trustees* the collective bargaining agreement at issue provided for binding arbitration. To this extent, the court stated that since it was the arbitrators' contract construction that the parties had bargained for, its contract interpretation would be subject to review only to determine if the award drew its essence from the agreement. (*Board of Trustees*, 102 Ill. App. 3d at 683-84.) Hence, there was no issue as to whether the arbitrators' award was binding.

The above cases, as well as others cited by defendant, fail to support his allegation that nonbinding arbitration violates Illinois public policy. Although Illinois case law does support arbitration as a means of settling disputes, Illinois has not gone so far as to change the terms of the contract to mandate binding arbitration when the parties have agreed otherwise. Hence, we agree with the trial court's finding that Illinois public policy does not prohibit enforcement of nonbinding arbitration agreements.

■ Defendant further contends that sections 11 through 14 of the Act (Ill. Rev. Stat. 1985, ch. 10, pars. 111 through 114) provide the only means of review of the arbitrators' award. He argues that the arbitration provision at issue seeks to expand the limited jurisdiction of the courts to review the arbitrators' award. Plaintiff, however, contends that it is not seeking a review of the arbitrators' award. Rather, it is invoking the policy provision permitting a trial on the damage issue if such a demand is made within 60 days of the arbitrators' decision.

Despite the purposes of the Act to resolve disputes in a less expensive and expeditious manner, an arbitration agreement "must be construed according to the language of the agreement. [Citations.] A court may not rewrite a contract to suit one of the parties but must enforce the terms as written. [Citations.]" *Schroud v. Van C. Argiris & Co.* (1979), 78 Ill. App. 3d 1092, 1096.

Here, the language in the arbitration clause specifically states that if the amount of damages exceeds the minimum statutory limit ($15,000) "either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision." Pursuant to this clause, plaintiff filed its complaint in the circuit court of Cook County within the specified time period. Thus, the court properly denied defendant's motion to dismiss the complaint.

■ Defendant's next contention is that the arbitration provision

in question is ambiguous. He argues that the provision fails to state what body will conduct the trial and what court branch, bench or jury.

The defendant's argument is frivolous. The insurance contract clearly states that either party may demand a trial. The trial court specifically stated that "no other reasonable interpretation could be made that if the amount of the award of damages exceeds that limit ***, which would mean $15,000 ***, either party may demand a trial." We acknowledge the well-established rule that ambiguities are resolved against the insurer. However, "we are also mindful that this rule does not authorize a distortion of language or the exercise of inventive powers for the creation of ambiguity where none exists." (*Wallace v. Blue Cross Hospital Service, Inc.* (1973), 13 Ill. App. 3d 803, 808-09.) The words in a policy should be given their plain and ordinary meaning and a court should not search for ambiguities where none exists. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 5.) We agree with the findings of the trial court. The policy language is plain and clear: the parties agreed that if the arbitration award exceeded the minimum statutory amount ($15,000), either party could demand a trial within a certain time frame.

■ Defendant further argues that the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, pars. 755a, 755a—2) (hereinafter the Code) prohibits nonbinding arbitration of underinsured motorist claims. In pertinent part, section 143a(1) of the Code states:

"[N]o policy insuring against loss resulting from liability imposed by law for bodily injury *** arising out of the *** use of a motor vehicle shall be *** issued for delivery in this State *** unless coverage is provided therein or supplemental thereto, in limits [15/30] for bodily injury or death set forth in Section 7—203 of The Illinois Vehicle Code ***. No such policy shall be *** issued ***, unless it is provided therein that any dispute with respect to such coverage shall be submitted for arbitration ***." Ill. Rev. Stat. 1985, ch. 73, par. 755a(1).

The trial court carefully analyzed this section and found that "such coverage" refers to the type of uninsured motorist coverage the insurer is required to provide pursuant to section 7—203 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 7—203). The trial court properly found that the legislature would not have used "such coverage" if the statute could be construed to include any dispute with regard to any coverage.

Section 143a—2(1) of the Code provides:

"No policy *** shall be *** issued *** unless uninsured motorist coverage as required in Section 143a of this Act is of-

fered in an amount up to the insured's bodily injury liability limits." (Ill. Rev. Stat. 1985, ch. 73, par. 755a—2(1).)

Section 143a—2(5) requires that underinsured motorist coverage shall be provided "in an amount at least equal to the total amount of uninsured motorist coverage *** where such uninsured motorist coverage exceeds the limits set forth in Section 7—203 of the Illinois Vehicle Code." Ill. Rev. Stat. 1985, ch. 73, par. 755a—2(5).

The trial court could not find any language in the above sections that requires arbitration for underinsured motorist coverage and neither can this court. We cannot hold that underinsured motorist coverage is the same as uninsured motorist coverage simply because section 143a—2 mandates underinsured motorist coverage to be equal to uninsured motorist coverage where the latter exceeds the minimum statutory limit. This is the analysis of the trial court and we are in agreement.

For the foregoing reasons, we affirm the order of the circuit court of Cook County.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.