NANCY SAMEK, Plaintiff-Appellee, v. LIBERTY MUTUAL FIRE INSUR-ANCE COMPANY, Defendant-Appellant.

First District (3rd Division)    No. 1—02—3525

Opinion filed June 18, 2003.

WOLFSON, J., specially concurring.
HOFFMAN, J., dissenting.

Joseph P. Postel and Howard T. Trafman, both of Meachum, Spahr, Cozzi, Postel, Zenz & Matyas, of Chicago, for appellant.

Stewart I. Gartner, of Chicago, for appellee.

PRESIDING JUSTICE SOUTH delivered the opinion of the court:
This appeal arises from an order of the circuit court of Cook County granting plaintiff's petition to confirm an arbitration award and denying defendant's cross-motion for judgment on the pleadings.

The relevant facts are as follows: Plaintiff filed a claim with her insurance carrier, Liberty, under her underinsured-motorist coverage, presumably due to an accident in which her vehicle was involved with an underinsured motorist. The record does not provide us with the details of that accident; however, that information is not necessary for the disposition of this case.

Liberty denied the claim submitted by Samek, and in accordance with the policy provisions, the claim was submitted to a three-person arbitration panel. Subsequent to a hearing, the arbitration panel granted Samek an award in the amount of $50,000. In a letter to Samek's attorney, Liberty rejected the arbitration award and made a demand for trial *de novo* pursuant to the arbitration provision contained within the underinsured-motorists coverage section of the automobile policy at issue.

Samek then filed a petition in the circuit court of Cook County to confirm the arbitration award. It is that petition which is the subject of this appeal. Liberty filed its response and cross-motion for judgment on the pleadings, which is also the subject of this appeal. In that response/cross-motion, Liberty invoked the trial *de novo* provision contained in the insurance policy and argued that under the terms and conditions of that policy it had the right to demand trial *de novo* since the arbitration award exceeded $20,000. Furthermore, while Liberty acknowledged that Illinois case law has declared trial *de novo* provisions to be contrary to public policy, it pointed out that those Illinois cases were not out of the First District and that the circuit court of Cook County should decline to follow those decisions.

After a hearing the circuit court denied Liberty's cross-motion for judgment on the pleadings and granted Samek's petition to confirm

the arbitration award in the amount of $50,000 on the basis that the trial *de novo* clause in the insurance policy was void as being contrary to public policy.

The sole issue presented for our review is whether trial *de novo* clauses violate public policy. While this issue has been addressed by other districts in this state, we in the First District have never been called upon to address it until now.

The insurance policy issued to Samek contained a provision that permitted either party to reject an arbitration award that exceeded $20,000 and to demand trial *de novo*. Specifically, the clause stated:

"ARBITRATION:

**THE AMOUNT OF DAMAGES**. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which **your covered auto** is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial."

This provision has come to be known in the insurance industry as the "trial *de novo* provision" or in judicial parlance as the "escape hatch."

Our supreme court has addressed this question. In *Reed v. Farmers Insurance Group*, 188 Ill. 2d 168 (1999), plaintiff filed a declaratory judgment suit seeking a declaration that the arbitration requirement in the uninsured motorist portion of her automobile insurance policy was unenforceable. As required by section 143a of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/143a (West 1996)), the policy contained a clause calling for arbitration if the plaintiff and her insurer were unable to agree on the amount of compensation she was entitled to receive under the policy's uninsured motorist coverage. The policy further provided, again as required by statute, that the arbitrators' award would be binding on the parties if it fell below a specified amount, which was the minimum required limits for bodily injury as set forth in the Illinois Safety and Family Financial Responsibility Law at $20,000 per person (626 ILCS 5/7—100 *et seq.* (West 1996)). If the arbitrators awarded more than that amount, either party could reject it and invoke the trial *de novo* clause, and the case would proceed to trial. *Reed*, 188 Ill. 2d at 170.

■ Section 143a of the Insurance Code requires that disputes with respect to "uninsured" motorist coverage be submitted to arbitration and that the arbitrator's determination is binding only with respect to awards below $20,000. That statute permits either party to reject an award which exceeds that amount and to resolve the claim through the judicial process. Specifically, section 143a(1) states:

"Any decision made by the arbitrators shall be binding for the amount of damages not exceeding the limits for bodily injury or

death set forth in Section 7—203 of the Illinois Vehicle Code." 215 ILCS 5/143a(1) (West 1996).

The *Reed* court upheld the trial *de novo* provision in the insurance policy and stated the following:

"In the present case *** the legislature has determined that uninsured-motorist coverage must contain this provision, and section 143a of the Insurance Code accordingly requires its presence in automobile policies." *Reed*, 188 Ill. 2d at 174.

The supreme court concluded that since the trial *de novo* provision was required by statute in uninsured motorist policies, it did not violate public policy. *Reed*, 188 Ill. 2d at 175.

In *Fireman's Fund Insurance Cos. v. Bugailiskis*, 278 Ill. App. 3d 19 (1996), the defendant appealed from the denial of her motion to dismiss the insurance company's complaint demanding a jury trial of its underinsured-motorist claim. In that case, the claim was submitted to arbitration, and the panel found the insurance company liable and that Bugailiskis' damages were in the net amount of $139,500.85. The disputed arbitration provision in that case was identical to the one present here. The insurance company, in reliance on that trial *de novo* provision, rejected the award and filed a complaint demanding a jury trial.

*Bugailiskis* held that the clause unfairly and unequivocally favored the insurer because it allowed the insurer to avoid a high award while binding the insured to a lower one. *Bugailiskis*, 278 Ill. App. 3d at 22. The court equated trial *de novo* provisions to contracts of adhesion because they lack mutuality of remedy and are entered into between parties possessing unequal bargaining power with little or no opportunity for arm's-length negotiation. *Bugailiskis*, 278 Ill. App. 3d at 22.

Both *Parker v. American Family Insurance Co.*, 315 Ill. App. 3d 431, 734 N.E.2d 83 (2000), and *Bugailiskis* stand for the proposition that trial *de novo* provisions are inherently unfair because they afford a remedy to insurers, while denying the same to the insured, which means that while both parties are bound by a low award, the insurance company is unlikely to appeal it, but the insured is bound by it. On the other hand, the parties are not bound by a high award, and only the insurer would be likely to reject it. In other words, according to *Parker* and *Bugailiskis*, there is a lack of "mutuality of remedy" in the trial *de novo* provisions.

Defendant argues that it is incorrect to assume that neither party would demand a trial because conceivably a plaintiff could appeal a "high" amount if he or she believed the amount was not "high" enough. This argument was addressed by the dissent in the *Parker*

case, wherein it stated that the majority had engaged in "the unsupported assumption that only the insurance company would seek to avoid an arbitration award of more than $20,000. Such an assumption is nothing more than pure speculation." *Parker*, 315 Ill. App. 3d at 436 (Holdridge, J., dissenting). The dissent then went on to quote from *Liberty Mutual Insurance Co. v. Mandile*, 192 Ariz. 216, 963 P.2d 295 (App. 1997), which stated:

> "When a plaintiff who thinks his case is worth $300,000 gets only $50,000 from the arbitrators, that plaintiff will want the option of an appeal (and may use that option as a leverage point in settlement discussions). Conversely, an insurance company that thinks a case is defensible, and is ordered to pay $14,999, may wish it could appeal but will lack the right to do so. The *de novo* appeal right, overall is probably as important to plaintiffs as to defendants." *Mandile*, 192 Ariz. at 221, 963 P.2d at 300.

In *Parker v. American Family Insurance Co.*, 315 Ill. App. 3d 431, 734 N.E.2d 83 (2000), the Third District held that as to underinsured-motorist policies, the trial *de novo* provision was unenforceable and contrary to public policy. The *Parker* court originally affirmed the trial court's conclusion that the trial *de novo* clause was contrary to public policy. However, the insurance company filed a petition for leave to appeal to the supreme court, which denied the petition but entered a supervisory order directing the appellate court to vacate its judgment and reconsider the case in light of *Reed v. Farmers Insurance Group*, 188 Ill. 2d 168, 720 N.E.2d 1052 (1999). On reconsideration, the *Parker* court distinguished *Reed* on the basis that that case involved *uninsured*-motorist coverage as opposed to *underinsured*-motorist coverage and went on to state:

> "Section 143(a) [*sic*] of the Insurance Code provides that any decision made by arbitrators in an *uninsured* motorist case 'shall be binding for the amount of damages not exceeding the limits for bodily injury or death set forth in Section 7—203 of the Illinois Vehicle Code.' 215 ILCS 5/143a (West 1998). In other words, when arbitrators issue awards of less than $20,000, those awards are binding upon the parties. Given that the legislature had declared the public policy of the state with regard to uninsured motorist coverage, the *Reed* court reasoned that ' " 'the judicial department must remain silent, and if a modification or change in such policy is desired the law-making department must be applied to, and not the judiciary, whose function is to declare the law but not to make it.' " ' [Citation.]
>
> *Unlike Reed, there is no such provision in the Insurance Code pertaining to underinsured motorist coverage. In fact, the court in Reed distinguished Bugailiskis on this basis alone, pointing out*

*that the statute concerning underinsured motorist coverage at issue in Bugailiskis 'does not require a similar arbitration provision.'* [Citation.]" (Emphasis added.) *Parker*, 315 Ill. App. 3d at 434-35.

The *Parker* court once again affirmed the trial court and concluded that it would follow the line of cases which holds that trial *de novo* provisions are contrary to public policy because they unfairly favor the insurer over the insured.

Realistically, whenever an arbitration panel awards damages in an amount exceeding the minimum limit for bodily injury, it is safe to assume that insurance companies in more instances than not exercise their options under the trial *de novo* provision in order to avoid paying the higher cost. While one can certainly visualize an endless number of scenarios wherein the insured might want to invoke the trial *de novo* clause on a high amount because he or she believes the amount awarded is inadequate and wants an even higher amount, in most cases the insured would choose to accept the higher award. However, if the award is low, the insured is powerless to attack it under the provision and lacks the remedy afforded to the insurer if the award is high. We agree with the *Parker* and *Bugailiskis* courts, which state that in more instances than not the insurance companies will invoke the trial *de novo* provisions on high awards.

In *Kost v. Farmers Automobile Insurance Ass'n*, 328 Ill. App. 3d 649 (2002), plaintiffs presented a claim for underinsured-motorist coverage to defendant. The insurance policy contained a trial *de novo* clause identical to the one present here. Plaintiff's claim was submitted to arbitration. A panel of arbitrators issued an award in the amount of $300,000 but found plaintiff to be 50% negligent, thereby making recoverable damages in the amount of $150,000. *Kost*, 328 Ill. App. 3d at 651. Plaintiffs then filed a complaint in the circuit court of Franklin County and requested that the arbitration award be vacated in accordance with the trial *de novo* clause, and defendant filed a motion to dismiss. The trial court granted that motion and dismissed plaintiff's complaint with prejudice. *Kost*, 328 Ill. App. 3d at 651.

On appeal the Fifth District reversed and remanded, holding that it would be unfair to allow the insurer that has placed a biased trial *de novo* provision in a policy to then claim that the provision is void against public policy when an insured attempts to enforce the provision. *Kost*, 328 Ill. App. 3d at 654-55. The court went on to state:

"The benefit of a trial *de novo* should not be withheld from an insured simply because the insurer drafted the provision unfairly. The court should not shelter defendant's duplicity. Defendant unfairly attempted to limit a benefit paid for by the decedent and should not be allowed to enforce this clause. In contrast, the

decedent's expectation that he would be allowed a trial *de novo* after arbitration was legitimate. Allowing plaintiffs to enforce this provision does not frustrate public policy. Refusing to allow plaintiffs to enforce the provision would deny a benefit contracted for by the decedent and would reward defendant for drafting an unconscionable provision." *Kost*, 328 Ill. App. 3d at 654.

■ The *Kost* case may not add much to the analysis here except that it illustrates that there certainly are situations where an insured would want to exercise his or her right under a trial *de novo* clause because the award, while high, is not high enough. But the courts in this state are consistent in their opinions that these provisions are inserted into insurance policies by the insurers in order to give them redress in the event there is a high arbitration award but binding the insured in the event the award is low. While this court, as did the *Parker* and *Bugailiskis* courts, wants to make it clear that nonbinding arbitration is permissible in Illinois, trial *de novo* provisions disturbingly take on the character of adhesion contracts because they lack a mutuality of remedy between the insurer and the insured.

Therefore, we hold that trial *de novo* clauses contained in underinsured policies violate public policy.

Based upon the foregoing analysis, we affirm the judgment of the circuit court of Cook County, which entered judgment on the arbitration award and denied defendant's cross-motion for a trial *de novo*. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

JUSTICE WOLFSON, specially concurring:

I write this specially concurring opinion simply to add an observation to Justice South's well-reasoned analysis.

I find in *Reed v. Farmers Insurance Group*, 188 Ill. 2d 168 (1999), a clear signal that *Fireman's Fund Insurance Cos. v. Bugailiskis*, 278 Ill. App. 3d 19 (1996), was correctly decided. The supreme court took pains to leave the *Bugailiskis* holding intact when it rested its decision on a section of the Insurance Code that requires rejection of awards over a certain limit in uninsured-motorist coverage cases.

It would have been an easy matter to criticize the *Bugailiskis* public policy analysis for arbitration clauses in underinsured-motorist policies. Instead, the supreme court left the appellate holding intact: "Notably, the statute concerning underinsured-motorist coverage, at issue in *Bugailiskis*, does not require a similar arbitration provision." *Reed*, 188 Ill. 2d at 174.

Given the supreme court's analysis in *Reed* and the decisions of

appellate courts in the Second, Third, and Fifth Districts, not to mention the substantial majority of other states which have considered this issue, I think a single dissenting opinion is a slim reason for a change in direction.

JUSTICE HOFFMAN, dissenting:

I must respectfully dissent. Unlike my colleagues in the majority, I do not believe that provisions in automobile insurance policies relating to underinsured-motorist coverage which allow either the insured or the insurer to reject arbitration awards above a certain threshold and demand a trial *de novo* violate public policy.

The two cases which have directly addressed the precise issue present in this case, and upon which the majority relies, are *Fireman's Fund Insurance Cos. v. Bugailiskis*, 278 Ill. App. 3d 19, 662 N.E.2d 555 (1996) (hereinafter referred to as *Bugailiskis*), and *Parker v. American Family Insurance Co.*, 315 Ill. App. 3d 431, 734 N.E.2d 83 (2000). According to *Bugailiskis* and *Parker*, clauses in automobile insurance policies which govern underinsured-motorist coverage and which bind the parties to accept an arbitration award below the minimum liability amount but which allow either party to reject an award in excess of that amount and demand a trial (hereinafter referred to as "trial *de novo* clauses") are void as against public policy because they unfairly favor the insurer. *Parker*, 315 Ill. App. 3d at 433-35; *Bugailiskis*, 279 Ill. App. 3d at 22-23. The rationale for such a holding seems to be that both parties are bound to a low award, which an insurance company is unlikely to reject, and not bound to a high award, which the insurance company is more likely to reject. However, as Justice Holdridge pointed out in his dissent in *Parker*, this reasoning is based upon pure speculation and the unsupported assumption that only an insurance company would seek to avoid an arbitration award above the minimum liability amount. *Parker*, 315 Ill. App. 3d at 436 (Holdridge, J., dissenting). I have yet to find any argument which supports the proposition that an insured is not likely to reject an award which, although in excess of the minimum liability amount, is far below the amount to which he believes himself entitled. In point of fact, one need look no further than the case of *Kost v. Farmers Automobile Insurance Ass'n*, 328 Ill. App. 3d 649, 766 N.E.2d 676 (2002), to verify the assertion that insureds do reject arbitration awards in excess of the minimum liability amount when they feel that they have not been justly compensated. I wish to be clear, however, that my reference to the *Kost* opinion should not be interpreted as my agreement with either the result reached in that case or the reasoning employed to reach that result.

In *Reed v. Farmers Insurance Group*, 188 Ill. 2d 168, 720 N.E.2d 1052 (1999), the supreme court held that a similar provision in an automobile insurance policy covering arbitration of uninsured-motorist claims did not violate public policy and was fully enforceable. Admittedly, the supreme court's decision in *Reed* rested upon the fact that the clause in issue was mandated by statute. *Reed*, 188 Ill. 2d at 174-75. However, I find it somewhat anomalous for the judiciary of this state to find a contractual provision relating to the arbitration of underinsured-motorist claims to be contrary to public policy when, at the same time, an almost identical provision relating to the arbitration of uninsured-motorist claims is mandated by the legislature. As the supreme court has acknowledged, the legislature occupies a superior position in determining public policy (*Reed*, 188 Ill. 2d at 175), and I can conceive of no difference in the public and private interest factors which are relevant to a determination as to the propriety of permitting trial *de novo* clauses to be included in arbitration provisions governing uninsured-motorist coverage as compared to those governing underinsured-motorist coverage.

Based on the foregoing analysis, I would decline to follow *Bugailiskis* and *Parker*, hold that trial *de novo* clauses included in arbitration provisions governing underinsured-motorist coverage do not violate public policy, and reverse the judgment of the circuit court in this matter.